OPINION
This is an appeal from the Geauga County Court of Common Pleas. Appellant, Brian D. Irons, appeals from the sentences imposed on him in Case Nos. 96 C 91 and 97 C 48.
On August 9, 1996, appellant was indicted in Geauga Case No. 96 C 91 on four counts: count one, breaking and entering, a felony of the fifth degree, in violation of R.C. 2911.13(B); count two, burglary, a felony of the third degree, in violation of R.C.2911.12(A)(3); count three, petty theft, a misdemeanor of the first degree, in violation of R.C. 2913.02(B); and count four, criminal damaging, a misdemeanor of the second degree, in violation of R.C. 2909.06(A)(1). The case was assigned to Judge H.F. Inderlied, Jr., and at the arraignment held on May 2, 1997, appellant entered a plea of not guilty to all charges and not guilty by reason of insanity.
Subsequently, appellant was indicted on May 23, 1997, in Geauga Case No. 97 C 48 on three counts: count one, breaking and entering, a felony of the fifth degree, in violation of R.C.2911.13(B); count two, aggravated assault, a felony of the fourth degree, in violation of R.C. 2903.12(A)(1); and count three, burglary, a felony of the fourth degree, in violation of R.C.2911.12(A)(4). The case was assigned to Judge Forrest W. Burt. On May 28, 1997, at the arraignment, appellant entered a plea of not guilty to all charges and not guilty by reason of insanity. On August 6, 1997, the trial judge concluded that appellant was competent to stand trial in that matter. This case was transferred to Judge Inderlied, Jr. for a change of plea and sentencing.
Both matters dealt with appellant's former girlfriend, Carol Sulak ("Sulak"), who is the mother of his children. A plea agreement was reached in both cases. On September 8, 1997, appellant appeared before the trial court and in its Case No. 96 C 91 entered a plea of guilty on count one, breaking and entering; count three, petty theft; and count four, criminal damaging. As part of the plea agreement, count two, burglary, was dismissed. Additionally, in its Case No. 97 C 48, appellant entered a plea of guilty on count one, breaking and entering. Count two, aggravated assault, and count three, burglary, were dismissed. The trial court also ordered a presentence investigation ("PSI") report be prepared in both cases.
A sentencing hearing was held in both cases on October 2, 1997. Prior to imposing sentence, the trial court allowed the prosecutor to make recommendations concerning the penalty. After reviewing the extensive PSI report, he requested that "some prison time [be] imposed upon [appellant] to impress upon him to follow rules and get him on the straight and narrow."
The trial court afforded defense counsel an opportunity to speak. He asked the court to impose community sanctions since appellant had already been incarcerated for almost six months. He stated that appellant is extremely immature and his past actions have been impulsive. He also mentioned that all of the parties involved acted in an immature manner. Further, he added that appellant's frustration comes from not being able to be with his children. He explained that Sulak's current boyfriend committed the only physical harm involved.[1]
The trial court asked appellant if he wished to address the court. He stated that he felt things were blown out of proportion. He alleged that he walked into an open barn to watch his children play, and was physically abused. He admitted that he threatened Sulak, and suggested that the relationship between himself and Sulak simply did not work. He added that "[i]f guilty of loving [his] kids is what [he] did wrong, then [he is] guilty of loving [his] kids, and [he is] not ashamed [of it]."
The trial court proceeded with sentencing after acknowledging that "these kinds of situations are two-way streets, and that in all likelihood [Sulak] played a significant role in the circumstances that have arisen and the conduct that occurred between" both parties. The trial judge considered the fact that appellant committed the offenses in the second case, Case No. 97 C 48, while he was on bond for the first case. The court stated that "[d]omestic violence and stalking conduct have become a focal point * * *" in our society, and that although the pleas to "breaking and entering[,] criminal damaging and petty theft don't specifically cover the offenses of domestic violence or stalking, those are precisely the kinds of underlying circumstances that have generated these cases." The trial court also said that those types of conduct have become "a menace and a liability" in this society and they will not be tolerated.
The court found that the presumption for community control that is usually available in fifth degree felony cases was rebutted by appellant's threat of physical harm in Case No. 97 C 48. Further, the court reasoned that appellant's conduct showed a systematic effort to harass Sulak and her family. The court also determined that his actions were the most serious form of breaking and entering. The trial judge stated that appellant's statements to the court revealed that he displayed no remorse and that he considered the incidents "some kind of exaggeration on [Sulak's] part, some kind of imposition on [him], because [he has not] been given the right to see [his] children in a manner [he] consider[s] fit." The court also found that he "demonstrated the greatest likelihood to repeat this or other criminal conduct towards the same people."
In a judgment entry dated October 30, 1997, the trial court sentenced appellant in Case No. 96 C 91, to a term of twelve months in the state penal system for breaking and entering, six months in the county jail for petty theft, and ninety days in the county jail for the criminal damaging and endangering. All prison and jail sentences were to be served concurrently with one another. Further, on that same date in a separate judgment entry, appellant was sentenced in Case No. 97 C 48, to serve twelve months in the state penal system for breaking and entering. That sentence was to run consecutive to the sentence imposed in Case No. 96 C 91. The trial court also granted appellee leave to dismiss the second count of the indictment in Case No. 96 C 91, and the second and third counts of the indictment in Case No. 97 C 48. In both cases, appellant was given jail time credit for one hundred seventy-five days.[2]
Appellant timely filed this notice of appeal and asserts the following as error:
 "[1.] The trial court erred in finding the presumption for community control usually available in fifth degree felony cases was rebutted by a threat of physical harm in connection with Case No. 97 C 48.
 "[2.] The trial court erred in sentencing appellant to the longest possible term permitted on each felony offense.
 "[3] The trial court erred by imposing multiple prison terms on appellant for convictions of multiple offenses and requiring the sentences to be served consecutively."
In the first assignment of error, appellant asserts that the trial court erred in Case No. 97 C 48 in finding that the presumption for community control was rebutted by the threat of physical harm. Appellant argues that although a trial court has broad discretion in imposing sentences, it must consider statutory sentencing criteria, and when those criteria are apparently disregarded, the trial court has abused its discretion.
In State v. Powell (Jan. 22, 1999), Greene App. No. 98 CA 33, unreported, at 5, 1999 WL 22751, the court held that:
 "* * * there is no statutory presumption that a fourth or fifth degree felon be sentenced to community control rather than prison. Although the Sentencing Commission recommended a straight presumption against imprisonment for fourth and fifth degree felonies unless one of the eight enumerated factors increasing the seriousness of the offense existed, the General Assembly was unwilling to accept a straight presumption. Rather, R.C. 2929.13(B) gives general guidance and a `disposition against imprisonment' for fourth and fifth degree felonies. Griffin Katz, Ohio Felony Sentencing Law, 1996-97, pp. 61-62, 67.
 "* * * as we read R.C. 2929.13(B)(2), subsection (a) mandates that the trial court impose a prison sentence where it makes a finding under (B)(1) and where it also finds, after considering the R.C. 2929.12 factors, that a prison sentence is consistent with the purposes and principles of sentencing and that the offender is not amenable to a community control sanction. On the other hand, subsection (b) mandates that the trial court impose a community control sanction where it does not make a finding under (B)(1) and where it also finds, after considering the R.C. 2929.12 factors, that a community control sanction or a combination of community control sanctions is consistent with the purposes and principles of sentencing."
 In the instant matter, the trial court did not make a finding under R.C. 2929.13(B)(1); however, it did find that a community control sanction was inconsistent with the purposes and principles of sentencing after considering the factors in R.C. 2929.12. Thus, the trial court was not bound by R.C. 2929.13(B)(2)(a) to impose a prison sentence or by R.C. 2929.13(B)(2)(b) to impose a community control sanction. Instead, it was within the trial court's judgment to determine the sentence that would best serve the primary purposes and principles of sentencing contained in R.C. 2929.11.
In State v. Sutherland (Aug. 15, 1997), Greene App. No. 97CA25, unreported, at 4, 1997 WL 464788, the trial court specifically found that the defendant was not amenable to community control sanctions, and that prison was consistent with the purposes and principles of sentencing found in R.C. 2929.11. Further, the record amply supported the court's finding that the defendant was not amenable to community control sanctions. Id. at 5. Thus, the trial court acted within its sound discretion in sentencing the defendant to a prison term. Id.
 A reviewing court will not reverse a sentence unless appellant shows that the trial court is statutorily incorrect or that it abused the discretion it is afforded by failing to consider sentencing factors. State v. Earle (June 26, 1998), Lake App. No. 96-L-195, unreported, at 5. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157.
A trial court may abuse its discretion by imposing a sentence that disregards statutory criteria, without a suitable explanation. State v. Gephart (May 5, 1995), Geauga App. No. 94-G-1861, unreported, at 5. The trial court may note a defendant's lack of remorse when imposing the sentence. Id. at 6.
R.C. 2929.13(B)(1) states:
 "* * * in sentencing an offender for a felony of the fourth or fifth degree, the sentencing court shall determine whether any of the following apply:
"* * *
 "(b) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person with a deadly weapon.
 "(c) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person, and the offender previously was convicted of an offense that caused physical harm to a person.
"* * *
 "(2)(a) If the court makes a finding described in division [(B)(1)(b) or (c)] * * * and if the court, after considering the factors set forth in [R.C. 2929.12], finds that a prison term is consistent with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code and finds that the offender is not amenable to an available community control sanction, the court shall impose a prison term upon the offender. * * *"
 In sentencing an offender for a fifth degree felony, the court must first consider the factors listed in R.C. 2929.13(B)(1) to determine whether the offender should receive a prison sentence. The pertinent factors applicable to the present case are R.C. 2929.13(B)(1)(b) and (c), which require the court to consider whether the offender tried to cause or made an actual threat of physical harm to a person with a deadly weapon or whether the offender tried to cause or made an actual threat of physical harm to a person and whether the offender was previously convicted of an offense that caused physical harm to a person. Pursuant to R.C. 2929.13(B)(2)(a), if the court finds that the offender had previously served a prison term, then the court may sentence the offender to prison if, after considering the criteria set forth in R.C. 2929.12, it "finds that a prison term is consistent with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code and finds that the offender is not amenable to an available community control sanction * * *." Therefore, in order to sentence an offender to prison for a fifth degree felony, the court must: (1) find that at least one of the circumstances in R.C. 2929.13(B)(1) exists; (2) consider the factors set forth in R.C. 2929.12; (3) find that a prison term is consistent with the purposes and principles of sentencing set forth in R.C. 2929.11; and (4) find that the offender is not amenable to available community control sanctions.
 In the case at bar, although the trial court found that appellant made an actual threat of physical harm to a person and he admitted threatening Sulak, the record does not indicate whether appellant made the threat with a deadly weapon as required by R.C. 2929.13(B)(1). Moreover, the record does not reflect whether appellant was previously convicted of an offense and caused physical harm to a person. Thus, the first requirement to sentence appellant to prison time was not satisfied.
Since none of the circumstances in R.C. 2929.13(B)(1) exist, we do not need to consider the remaining factors required to sentence appellant to a prison term. Thus, we conclude that the trial court abused its discretion in deciding that community control sanctions were not available to appellant in Case No. 97 C 48. Appellant's first assignment of error is sustained.
Based upon our determination of the first assignment of error, the second and third assignments of error are rendered moot.
In reaching our decision in this matter, we are mindful that trial courts are traveling a difficult, arduous, and murky road in applying the new components of the "Truth-in-Sentencing" legislation, and in deriving what this legislation requires in given cases. Our role on the appellate level is no less difficult. All members of the bench will have to exercise patience until an adequate anthology has been achieved on a case-by-case basis to provide all of us with a better blueprint of guidance in applying these standards.
For the foregoing reasons, the first assignment of error is with merit and the second and third assignments of error are rendered moot. The judgment of the Geauga County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with this opinion.
_______________________________
PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J.,
NADER, J.,
concur.
[1] Sulak's boyfriend allegedly beat appellant with a shovel and, as a result, appellant suffered from a concussion and two broken arms.
[2] Pursuant to the language in both judgment entries, the one hundred seventy-five day credit is to be applied to each sentence, even though the sentences are otherwise consecutive.